FILED
2019 Jul-09 PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **YVETTE BAKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action Number |
| v. ) | **5:19-cv-00117-AKK** |
| ) | |
| **HEALTH CARE AUTHORITY OF** ) | |
| **THE CITY OF HUNTSVILLE d/b/a** ) | |
| **HUNTSVILLE HOSPITAL, et al.,** ) | |
| ) | |
| **Defendants.** | |

## MEMORANDUM OPINION

This is a lawsuit filed under the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd, *et seq.* ("EMTALA") and Alabama state law against the Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital, and two of its employees. Doc. 12. Congress enacted EMTALA to prevent hospitals from "turning away or transferring indigent patients without evaluation or treatment." *Harry v. Marchant*, 291 F.3d 767, 768 (11th Cir. 2002) (en banc). In particular, EMTALA requires hospitals (1) to provide the appropriate medical screening and (2) to stabilize the individuals who present for treatment. *Id.* at 770 (citing 42 U.S.C. § 1395dd). According to Yvette Baker, Huntsville Hospital violated EMTALA by failing to conduct an appropriate screening examination when she

presented for treatment at the Hospital's emergency department with symptoms of a stroke and failed to stabilize her after her admission. Doc. 12 at 6-7, 31-37.

The defendants have moved to dismiss the lawsuit, contending that they provided a timely appropriate medical screening and treated Ms. Baker for the conditions she presented with, and ultimately stabilizing her. Docs. 15 and 16. The defendants' contentions are consistent with the allegations in Ms. Baker's complaint and proposed third amended complaint. Indeed, Ms. Baker does not dispute the defendants' contentions. She claims instead that the Hospital should have done more than it did in treating her. While that may be the case, EMTALA is not a medical malpractice statute. Therefore, Ms. Baker has failed to state a plausible EMTALA claim, and her EMTALA claims are due to be dismissed. In light of the dismissal of the federal claims, the court declines to exercise jurisdiction over the remaining state law claims.

I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and

presented for treatment at the Hospital's emergency department with symptoms of a stroke and failed to stabilize her after her admission. Doc. 12 at 6-7, 31-37.

The defendants have moved to dismiss the lawsuit, contending that they provided a timely appropriate medical screening and treated Ms. Baker for the conditions she presented with, and ultimately stabilizing her. Docs. 15 and 16. The defendants' contentions are consistent with the allegations in Ms. Baker's complaint and proposed third amended complaint. Indeed, Ms. Baker does not dispute the defendants' contentions. She claims instead that the Hospital should have done more than it did in treating her. While that may be the case, EMTALA is not a medical malpractice statute. Therefore, Ms. Baker has failed to state a plausible EMTALA claim, and her EMTALA claims are due to be dismissed. In light of the dismissal of the federal claims, the court declines to exercise jurisdiction over the remaining state law claims.

I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and

conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555. Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. ANALYSIS

To prevail on her EMTALA claim, Ms. Baker must plead facts showing that the Hospital violated the appropriate medical screening or stabilization requirements. Ms. Baker has failed to make either showing.

### A. Whether Ms. Baker asserts a plausible claim for alleged violations of EMTALA's screening requirement

Under EMTALA, when an individual presents to an emergency department for examination or treatment, "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). An appropriate screening must be "calculated to identify critical medical conditions," and the screening an indigent individual receives "must be similar to that which would be provided for any other patient with similar complaints." *Harry v. Marchant*, 237 F.3d 1315, 1319 (11th Cir. 2001) (citing *Holcomb v Monahan*, 30 F.3d 116, 117 (11th Cir. 1994)).[1] But, EMTALA is not a "substitute for a state malpractice claim," and its screening requirement "is not intended to ensure each emergency room patient a correct diagnosis." *Id.* (citation omitted).

---

[1] The Eleventh Circuit vacated the panel opinion in *Harry v. Marchant*, 237 F.3d 1315 (11th Cir. 2001), pending a rehearing en banc, 259 F.3d 1310. After rehearing, the Circuit reinstated the portion of the panel opinion addressing EMTALA's medical screening exam requirement. *See* 291 F.3d at 775, n.15.

4

According to the pleadings, the Hospital provided Ms. Baker with four screening examinations within an hour of her arrival, and initially diagnosed Ms. Baker with hypertensive emergency, head injury, and hypocalcemia. Docs. 12 at 13, 17, 21; 12-1 at 6-8. In addition, Ms. Baker alleges that a physician examined her and diagnosed her with a stroke several hours later. Docs. 12 at 19; 12-1 at 7. By Ms. Baker's own contentions, "[t]he facts alleged demonstrate that [the Hospital] conducted an initial screening examination and determined that [Ms. Baker] had an emergency condition." *Harry*, 237 F.3d at 1319. Ms. Baker seeks to avoid this plain conclusion by claiming that the Hospital did not conduct an appropriate medical screening because the Hospital purportedly failed to diagnose or treat her stroke earlier than it did, and purportedly failed to properly treat her hypertensive emergency and possible head injury. *See id.* at 18, 20-25. As pleaded, however, Ms. Baker's medical screening claim is based on the Hospital's alleged negligence, and is an attempt to assert a malpractice claim. While Ms. Baker's allegations may support a stand-alone malpractice claim, EMTALA is not intended to be a federal malpractice statute, or "to redress a negligent diagnosis by the hospital . . . ." *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir. 1994). To the contrary, "[a]s long as the Hospital screened [the plaintiff] in a manner consistent with the screening that any other patient . . . would have received, there can be no liability under the EMTALA." *Nolen v. Boca Raton Community Hosp.,*

*Inc.*, 373 F.3d 1151, 1154-55 (11th Cir. 2004). Consequently, because Ms. Baker's allegations establish that the Hospital conducted an initial screening exam and diagnosed her with an emergency condition, Ms. Baker does not state a valid claim of an alleged violation of EMTALA's medical screening examination requirement.

Ms. Baker attempts to save her claim by alleging that the screening examination she received did not meet the Hospital's own policies and screening parameters, and that she "believes that she was treated differently than other patients presenting with the same symptoms." Docs. 12 at 7, 9-10, 32, 34-36; 12-1 at 9-12, 15. As Ms. Baker puts it, she did not receive treatment required by the Hospital's financial assistance policy, which provides in relevant part that "Huntsville Hospital's policy is to provide Emergency Care and Medically Necessary Care to patients without regard to race, creed, or ability to pay." Docs. 12 at 7, 9-10; 12-1 at 12, 17-18; 12-2 at 12-13. But, Ms. Baker does not allege the precise medical screening or screening parameters the Hospital's policy require that the Hospital purportedly failed to provide to her. *See doc.* 12.[2] While Ms. Baker suggests that the Hospital did not have neurologists on call as advertised to

---

[2] In her opposition brief, Ms. Baker asserts that she should have received a CT scan within sixty minutes of her arrival. Doc. 21. But, Ms. Baker cannot amend her complaint through "arguments of counsel made in opposition to a motion to dismiss." *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004). *See also Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

6

provide her with access to telemedicine, she admits that "a neurologist was secured on the telephone," doc. 12 at 21-22, 32, and her allegations are not sufficient to show that the Hospital had a policy of providing telemedicine as part of its medical screening procedure for other patients presenting with her symptoms. Indeed, Ms. Baker does not allege facts to support her conclusory allegations that the Hospital treated her differently than other patients with similar symptoms. *See id.*[3]

Put simply, Baker has not plausibly alleged that Huntsville Hospital violated its own policies or provided her with a different screening examination than other patients. As such, she has not stated a viable claim for violations of EMTALA's medical screening requirement.

  B. <u>Whether Ms. Baker asserts a plausible claim for alleged violations of EMTALA's stabilization requirement</u>

"Under EMTALA, the term 'to stabilize' means 'with respect to an emergency medical condition . . . , [a hospital must] provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result or occur *during the transfer of the individual from a facility*.'" *Harry*, 291 F.3d at 770-71 (quoting 42 U.S.C. § 1395dd(3)(3)(A)) (alterations in original,

---

[3] In fact, in a document attached to the Second Amended Complaint, Ms. Baker contends that "[r]eviewing other patient presentations . . . will *possibly* prove that other patients who present[] with a [h]ypertensive [e]mergency" are treated differently. Doc. 12-1 at 11 (emphasis added). But, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 556).

7

emphasis added). Stated differently, EMTALA's "stabilization requirement only sets forth standards for transferring a patient in either a stabilized or unstabilized condition," *id.* at 771, and, hospitals have "no duty under EMTALA to provide stabilization treatment to a patient with an emergency medical condition who is not transferred," *id.* at 775. Thus, "the EMTALA obligation to stabilize a patient ceases at the time of the patient's admission as an inpatient, *unless* the hospital fails to admit the patient in good faith or does so as a subterfuge to avert EMTALA liability." *Morgan v. North MS Medical Center, Inc.*, 403 F. Supp. 2d 1115, 1130 (S.D. Ala. 2005) (emphasis in original), *aff'd*, 225 F. App'x 828 (11th Cir. 2007).

Here, Ms. Baker admits that Huntsville Hospital admitted her to its neurological intensive care unit after diagnosing her stroke. *See* docs. 12 at 18-29, 36; 12-1 at 9. As such, it is irrelevant to the analysis that, as Ms. Baker maintains, she "was never stabilized even after her admission to [the] Hospital." Doc. 12 at 36. As an admitted inpatient care patient, and "[b]ecause [Ms. Baker] was not transferred, [Ms. Baker's] § 1395dd(b) stabilization requirement claim fails to state a valid cause of action." *Harry*, 291 F.3d at 775. Therefore, to survive the motion to dismiss, Ms. Baker must plead facts showing that the Hospital admitted her as a subterfuge to avoid EMTALA liability. *See Morgan*, 403 F. Supp. 2d at 1130. In that regard, Ms. Baker alleges that she "believes her admission [to Huntsville Hospital] was in 'bad faith,' and an attempt to subterfuge violations of the

8

EMTALA." Doc. 12 at 36. Ms. Baker, however, fails to allege any facts to support this contention. For example, there are no allegations suggesting that Huntsville Hospital had no intention of providing her with stabilizing care or that it admitted her only to avoid EMTALA liability. *See* doc. 12. Ms. Baker likely cannot make such an assertion given that the Second Amended Complaint indicates that Baker remained at the Hospital for more than a week following her admission to the NICU. *See id.* at 28. As a result, because Ms. Baker does not allege facts to support her conclusory allegation that the Hospital admitted her in bad faith, she has not alleged a plausible claim for alleged violations of EMTALA's stabilization requirement.

C. Ms. Baker's Motion for Leave to File a Third Amended Complaint

Well after the briefing period for the motion to dismiss, Ms. Baker moved for leave to file a third amended complaint to allege additional facts related to her EMTALA claims. Doc. 25. Although "leave to amend 'shall be freely given when justice so requires,' . . . [a] district court need not [] allow an amendment . . . where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citations omitted). Upon review, the proposed Third Amended Complaint does not save Ms. Baker's EMTALA claims. Specifically, the proposed complaint again alleges facts showing that the Huntsville Hospital conducted an initial medical screening on Ms. Baker, diagnosed an emergency medical condition, and

9

eventually admitted her to its NICU after diagnosing her stroke. *See* doc. 25-1. In addition, Ms. Baker's contention that the Hospital's failure to provide her with necessary treatments rises to the level of disparate treatment, *see id.* at 15-16, is unavailing. While Ms. Baker's allegations regarding the Hospital's purported failure to provide her with timely and necessary treatment may support a malpractice claim, they are not, without more, sufficient to show that the Hospital treated her differently than other individuals who present with similar symptoms. Similarly, Ms. Baker's contentions that the Hospital should have provided her with a CT scan and access to telemedicine do not indicate that the Hospital treated her differently than other individuals. Finally, the allegations that the Hospital initially intended to discharge Ms. Baker after treating her hypocalcemia do not suggest that it admitted her in bad faith after later diagnosing her stroke. *See id.* at 11, 21-22, 26, 29-30, 34, 44. Consequently, the proposed amendment is futile.

## III. CONCLUSION

In light of Ms. Baker's failure to plead a plausible EMTALA claim, the claim is due to be dismissed pursuant to Rule 12(b)(6). In addition, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Finally, because Ms. Baker's

proposed amendment would be futile, her motion for leave to amend, doc. 25 is due to be denied. A separate order dismissing this case will be issued.

**DONE** the 9th day of July, 2019.

*/s/ Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE